Seney, J.
This was an action brought in the court below for personal injuries. The averments in the petition are, in effect, that the railroad company negligently operated and run its trains in this city, and failure to ring a bell or sound a whistle at the crossing of one of the streets, Allen avenue, in the city of Findlay, and it running at a greater rate of speed through the city than is provided by ordinance. The ordinance has provided probably eight miles an hour, and a speed is claimed in the petition of forty miles an hour, and plaintiff claims damages, the decedent being killed on account of this negligence.
The railroad company filed an answer, denying the negligence charged in the petition, and as another defense claims that the decedent was guilty of contributory negligence. The affirmative defense upon contributory negligence was denied by reply.
The action was submitted to the court and jury,and resulted in a verdict in favor of the administrator against the railway company in the sum of $1800 00.
Motion for a new trial was interposed, which was overruled, and exceptions taken, and judgment rendered on the verdict.
A petition in error is filed in this court to reverse the action of the court below, alleging that the court erred in the respects averred in the motion for a new trial.
We find no error in the record, and the only important question to notice is whether the court erred in overruling the motion for a new trial because the verdict was not supported by the evidence.
The legal questions involved are net new; they arise *299 probably in every railroad case that is submitted to the circuit court for determination. The only question is, are the facts proven to support negligence on behalf of the railway company; and are the facts proven to support contributory negligence on behalf of the decedent.
It appears on the night in question, probably at seven or eight o’clock in the evening, the T. & O. C. Railway Company in the operation of its train was coming through Find-lay, and crossed before it reached the depot at Findlay what is known as Allen avenue. The decedent’s husband was driving the wagon; there were three seats in it, and there were five passengers beside himself. He was driving the wagon down Allen avenue at a rate of probably eight miles an hour The driver gave no heed to the train, neither looked nor listened, nor any one else in the wagon looked or listened for the approach of the train at this railroad crossing, although the railroad crossing was known to all tbe parties in the wagon,until they nearly reached the railroad crossing, when it was too late. The first element of looking or using their senses to discover tbe arrival of the train was expressed byi a young lady in the bill of exceptions, who says that she was the first one that looked and listened for the approach of the train, and she was so near the train that she could nearly touch the headlight, and when she noticed that, they were that close to the train, she called tbe attention of her aunt to it, who is the decedent in this case, and immediately the aunt called the attention of her husband to it who was the driver of the wagon, and immediately he tried to ,check the horses, but it was too late. His horses had probably got across the railroad track and his wagon on the track. As the. result of this several parties .were killed, and several injured. • ...
With this state of facts, is the- railroad company liable; can they be made liable? •
The evidence is conflicting as to the negligence, of the, railroad company, as to whether they rang the bell, or as to whether they sounded the whistle, but the jury were justified in finding that the railroad company were negligent; they were justified in,finding that the railroad -company did not ring the bell and did not sound the whistle as they approached Allen avenue. The jury were justified in finding that the *300 railroad company was run'ning'its train at a greater rate of speed than is provided by the city ordinance of the city; they were running from twenty five to forty miles an hour, and the ordinance provides eight miles an hour.
So that under the conflict of testimony in the bill, the negligence of the railroad company could well be found by the jury; and the only remaining question is,did the decedent contribute to her injury. As I have stated the facts, there is no doubt but what the driver of the wagon contributed to his injury; there is no doubt but what it was the duty of the driver of the wagon in approaching a railroad crossing, known to be a railroad crossing, to not drive at the rate of eight miles a hour,and if the view of the railroad was obstructed for any length of distance, be should exercise that much more care in approaching the railroad crossing.
The evidence of the plaintiff himself in the court below is that the view of the railroad was plain for 101 feet before they reached the railroad crossing, and from that point you could see the railroad for a distance of at least five hundred feet; you could see the train approaching one hundred feet from the railroad, a distance of at least five hundred feet. That being so, it was the duty of the driver of the wagon in approaching this railroad track to use bis senses of sight and hearing, and his duty to stop and look and listen before he attempted to drive across the track, and if he did that in this case there would have no accident happened. A second’s warning previous to the warning that was given by the young girl would have the horse and wagon on the side of the track without an attempt to cross. While it was the duty of this driver, the question is, was it the duty of the occupants of the wagon also to look and listen. It is claimed that this is the doctrine of imputed negligence, but the doctrine of imputed negligence does not apply in Ohio, goes far from that; the doctrine of imputed negligence might arise in this case if, when the husband was driving the wagon and the wife had notified the husband in time to stop, and the husband notwithstanding that warning had failed to stop, and the wife was in no condition to save herself, no doubt, although in that case the driver would be negligent, the decedent in this case would hold the railroad company liable.
*301 That is not the case here. No occupant of the wagon, no one until it was too late, attempted to use his senses, attempted to look or listen. It was as much the duty of the .occupants of the wagon to look and listen in approaching a dangerous crossing as it was that of the driver that was driving the wagon across the crossing. It could not be otherwise, and not on the doctrine of imputed negligence, but on the doctrine of the right of self-preservation,to protect themselves.
Now it has been held by the supreme court of this state that a person approaching a railroad crossing must use his senses when he knows it- to be a dangerous crossing; he must use his senses, look to see, listen to hear,and notwithstanding the railroad company may be guilty of negligence, notwithstanding the railroad company may be violatirg the law, yet a person cannot deliberately drive into one of their trains, —notwithstanding their negligence, and then expect to recover,
In the 32 Ohio State, page 66, the court say:
“Ordinary prudence requires that a person in the full enjoyment of the faculties of hearing and seeing, before attempting to pass over a known railway crossing, should use them for the purpose of discovering and avoiding danger from an approaching train; and the omission to do so, without a reasonable excuse therefor, is negligence, and will defeat an action by such person for an injury to which such negligence contributed.”
That applies to everybody approaching a railroad crossing, known to be b railroad crossing. They must use their sense*, their eyes and their ears in order to avoid the danger, and if they do not and danger befalls them on account of that, « railroad company is not liable, and could not be liable.
Now, in my judgment that applies to every one in the wagon. They must look and listen, and as I have said, if by looking and listening they could not have avoided the danger in this case, if the decedent could not have avoided the danger by the reckless carelessness of her husband, the railroad company would be liable; but in this case, the evidence shows, that on the first notice the husband thought he was not reckless and careless; that he stopped, — attempted to stop, and from that, if the warning had come sooner, no doubt the same result may be presumed — that he would have stopped, and thus have avoided the danger. *302 The precise question is settled in the state of New York, in the 120th New York Reports, page 200.
Doyle & Lewis, and H. F, Burlcet, for Plaintiff in Error.
John Poe, for Defendant in Error.
“The rule requiring a traveler on the highway on approaching a railroad crossing to have his senses alert to discover and avoid danger from an approaching train,is not relaxed in favor of one who is being carried in a vehicle owned and driven by another It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver,to learn of danger and avoid it, if practicable.
“Where, therefore, in an action to recover damages for an injury occasioned by a collision at a crossing, it appeared that plaintiff was riding in a buggy seated by the sideof the driver, who bad been hired to carry him; that an approaching train could be seen for some distance from the crossing, the location of which was well known to both, but that neither made any effort by looking or listening to discover such approach after they came within two hundred feet of the crossing, held, that plaintiff was properly non-suited.’’
So in this case,it was the duty of Mrs. Rodecker,although she was a passenger in this wagon that her husband was driving, it was her duty to look and listen for the approach of trains upon this railroad; and if she had looked and listened as it was her legal duty, a hundred feet away from the railroad crossing, she would not have been injured, and the fact that it was obscured — the railroad track was obscured from a point further than that should have warned them that much sooner; when they approached where they could see,they should have stopped to look and listen. They did- not do that, and for failure to do that they did not exercise the care that an ordinarily prudent person would have exercised, and in. failing to do that she contributed to her own injury, and contributing to her own injury notwithstanding the'negligence of the railroad company, the railroad company is not liable. ‘ •
The majority of this court think that the court below erred in overruling the motion fur a new trial. The judgment of the lower court will- be reversed, the verdict set aside, new trial granted with costs, execution awarded, and case remanded for executionand further proceedings in accordance with law.
Day., J, dissents.